IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | 14-541 |
| vs. | : | |
| | : | CIVIL NO. |
| ERIC C. OPITZ | : | 18-1505 |
| | : | |

**MEMORANDUM**

**STENGEL, C.J.**                                                            **July 20, 2018**

On July 11, 2016 Eric C. Opitz pleaded guilty to all counts in a twenty-count indictment for health care fraud, mail fraud, distribution of human growth hormone, and distribution of anabolic steroids, a Schedule III controlled substance. On January 26, 2017, Opitz was sentenced to 18-months' imprisonment on each of the twenty counts, all to run concurrently. Defendant was also ordered to pay $171,353 in restitution to Medicare. The Third Circuit Court of Appeals affirmed Mr. Opitz's judgment and sentence on August 8, 2017. U.S. v. Opitz, 704 Fed. Appx. 66 (3d Cir. 2017).

Defendant filed a timely pro se motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 67.) On June 5, 2018, the government filed a response in opposition (Doc. No. 70) and on June 14, 2018 defendant filed a counseled reply brief. (Doc. No. 71.) For the reasons discussed below, petitioner's motion is denied in its entirety without an evidentiary hearing.

**I.       Background**

The pertinent factual background is summarized by the Third Circuit's opinion in addressing Opitz's appeal:

1

Opitz suffers from human growth hormone deficiency and received a prescription for Genotropin, a human growth hormone supplement. Medicare paid for Opitz's Genotropin at a cost of approximately $461 per kit. From July 2012 through June 2014, Opitz sold the Genotropin for approximately $425 per kit, using postings on Craigslist. Undercover agents contacted Opitz through a Craigslist advertisement and purchased Genotropin from him. In addition, law enforcement identified more than twenty people who purchased the drug from Opitz.

A grand jury returned a twenty-count indictment charging Opitz with health care fraud in violation of 18 U.S.C. § 1347 (Counts 1-10); mail fraud, in violation of 18 U.S.C. § 1341 (Counts 11-13); distribution of human growth hormone, in violation of 21 U.S.C. § 333(e) (counts 14-17); and distribution of controlled substances in violation of 21 U.S.C. § 841 (Counts 18-20). Opitz pled guilty to all of the charges in the indictment without a plea.

At the sentencing hearing, the District Court considered evidence of the loss sustained as a result of Optiz's health care fraud. The Government argued that a loss figure totaling $171,353 was appropriate because it was at least, if not less than, the amount Medicare paid for the Genotropin Opitz admitted he fraudulently obtained, as reflected by his plea to Counts One through Ten of the indictment. The Government asserted that this was a reasonable figure because Opitz had not revealed to Medicare his intention to sell some of the drugs and thus he had received all of the drugs from Medicare under a false pretense. The Government also presented evidence from Opitz's bank account showing cash deposits totaling $97,760, which, it said, included approximately $33,000 in wire transfers from his customers, records from the Sands Casino in Bethlehem indicating Opitz made over $400,000 in buy-ins, handwritten notes taken from Opitz's residence showing the contact information for Genotropin customers and calculations for past sales, and his posting on Craigslist of over 1,800 advertisements offering to sell Genotropin. Opitz argued that while he was guilty of selling Genotropin, he used most of the drugs himself and should be responsible only for the value of the drugs that the Government proved he resold, which totaled $46,514.

In addressing the loss calculation under the Guidelines, the District Court found that the evidence supported the Government's proposed intended loss calculation of approximately $171,000. Applying the grouping rules, Opitz faced a Guidelines range of fifteen to twenty-one months. The Court imposed a sentence of eighteen months' imprisonment followed by three years of supervised release, and ordered Opitz to pay a special assessment of $2,000 and restitution of $171,353 to Medicare. Although Opitz objected to the Guideline loss calculation, he did not object to the restitution order.

704 Fed. Appx. at 68 (footnotes omitted). The Court of Appeals affirmed Opitz's judgment of conviction and sentence. Id.

## II. Standard of Review

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a).

Section 2255(b) provides the procedure for reviewing the motion:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(b).

The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255. See Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989); see also 28 U.S.C. § 2255, R. 8(a). In exercising that discretion, the court must decide whether the prisoner's claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. See Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d. Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)); see also Forte, 865 F.2d at 62.

### III. Discussion

Petitioner argues that he is entitled to relief under § 2255 because the "Court's sentencing and Restitution were both wrongfully based upon misrepresentations, made by the government, that Medicare suffered a financial loss of $171,353 as a result of defendant's fraud." (Doc. No. 67.) Specifically, petitioner argues that Medicare did not make any payments on his behalf for the prescription medications charged in the indictment.

For the reasons discussed below, I find that this claim is procedurally defaulted and petitioner is unable to demonstrate cause and prejudice to overcome the default.

**A. Petitioner's claim is procedurally defaulted.**

"An issue that could have been raised on direct appeal, but was not, is subject to

4

procedural default." U.S. v. Sokolow, 1999 WL 167677 (E.D.Pa. Mar. 23, 1999) (citing United States v. Frady, 456 U.S. 152, 162-67 (1982)). Procedurally defaulted claims are waived unless a habeas petitioner demonstrates either "(1) cause for the procedural default and actual prejudice, or (2) that s/he is actually innocent."[1] Parkin v. U.S., 565 Fed. Appx. 149, 151 (3d Cir. 2014).

1. Petitioner is unable to demonstrate cause to excuse the default.

Petitioner concedes that this claim is raised for the first time in his petition and is procedurally defaulted. Opitz submits, however, that the procedural default is excused based on "newly discovered evidence" that entitles him to relief under § 2255.

Under prevailing Third Circuit Precedent,

> Newly discovered evidence can only warrant a new trial under § 2255 if the following five requirements are satisfied.
> (1) The Evidence must be in fact newly discovered, i.e. discovered since trial;
> (2) Facts must be alleged from which the court may infer diligence on the part of the movant;
> (3) The evidence relied on must not be merely cumulative or impeaching;
> (4) It must be material to the issues involved; and
> (5) It must be such, and of such nature, as that, on a new trial the newly discovered evidence would probably produce an acquittal.

U.S. v. Williams, 166 F. Supp. 2d 286, 309 (E.D.Pa. 2001) (citing Gov't of Virgin Islands v. Lima, 774 F.2d 1245, 1250 (3d Cir. 1985)).

The purported "newly discovered evidence" is petitioner's alleged discovery that Medicare did not pay for the prescription drugs that he fraudulently obtained and illegally sold. Petitioner asserts that these prescriptions were paid for in combination with

---

[1] Petitioner does not allege a claim of actual innocence. Accordingly, my analysis will focus on whether petitioner can demonstrate cause and prejudice.

5

Highmark, Inc., his Medicare Part D prescription program, and through his own premium payments and co-payments. This argument fails for a number of reasons.

Initially, this argument fails because this evidence was well-known to the petitioner and his counsel since at least the filing of the indictment. Specifically, the indictment explains that Medicare Part D "provides subsidized prescription drug insurance" including human growth hormone when medically necessary. (Indictment ¶ 8.) The Medicare prescription drug plans were operated by private companies ("sponsors") that were approved by Medicare. (Id. at ¶ 9.) Medicare compensated these sponsors through a combination of enrollee premiums and reimbursement. (Id. at ¶ 10.) Highmark was one such sponsor. (Id. at ¶ 11.)

Opitz knew that Medicare provided Part D coverage to him through Highmark because he applied to Highmark for prescription drug benefits and regularly used his Part D benefits to pay for his prescription drugs. (Id. at ¶¶ 13, 18.) The prescriptions for human growth hormones and steroids that Opitz illegally sold were entirely subsidized by Medicare and its partners. I find that any claim that the mechanism of payment constitutes "newly discovered evidence" is meritless. Brown v. United States, 556 F.2d 224, 227 (3d Cir. 1997) ("the information presently relied upon for § 2255 relief was known to both the defendant and his counsel at the time of and during trial, a fact fatal to the § 2255 claim.").

Assuming, arguendo, that the alleged misrepresentation was in fact newly discovered, petitioner is unable to demonstrate that "the newly discovered evidence would probably produce an acquittal." Williams, 166 F. Supp. 2d at 309. Regardless of

6

whether Highmark covered petitioner's initial prescription costs, as discussed above, Medicare was ultimately responsible for the payment of these costs. Any argument to the contrary is simply wrong.

Equally unpersuasive is petitioner's blatantly false claim that he personally bore the cost of the medications through premiums and co-payments. The evidence demonstrates that Opitz qualified for "extra help" through Medicare and was required to pay no more than $0.00 for his monthly premiums and his yearly prescription drug plan deductible, and no more than $3.30 for prescription co-payments. (Doc. No. 70, Ex. A.) In fact, petitioner's Explanation of Benefits statement indicates that the prescription co-payment requirements were also waived. (Doc. No. 70, Ex. B.)

Despite petitioner's argument to the contrary, it is undisputed that Medicare suffered a financial loss of $171,353 as a result of defendant's fraud. Therefore, I find that petitioner failed to demonstrate cause sufficient to overcome the procedural default.

## 2. Petitioner is unable to demonstrate prejudice resulting from the alleged misrepresentation.

Even if the alleged "newly discovered evidence" constituted cause to overcome the procedural default, petitioner is unable to demonstrate actual prejudice. Actual prejudice under §2255 requires a showing that the error "worked to [defendant's] <u>actual</u> and substantial disadvantage, and that it infected the proceedings with error of constitutional dimensions." United States v. Parker, 2011 WL 13277568 (E.D.Pa. Dec. 19, 2011) (citing Frady, 456 U.S. at 170) (internal quotations omitted) (emphasis in original). Petitioner submits only that he is prejudiced because "as a collateral

7

consequence of his conviction in this matter, he will be permanently prevented from enrolling in Medicare." Petitioner fails to set forth any evidence demonstrating that this alleged "misrepresentation" in any way affected the constitutionality of his sentencing.

I find that petitioner's claim is procedurally defaulted and he is unable to demonstrate cause and actual prejudice to overcome the default.[2]

## IV. Conclusion

Petitioner's claim is procedurally defaulted and is dismissed without an evidentiary hearing. No certificate of appealability shall issue in this case because Mr. Opitz has failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

An appropriate Order follows.

---

[2] Even if petitioner demonstrated sufficient cause and prejudice to overcome the default, I find that the underlying claim is not cognizable on habeas review. The grounds for collateral attack of a sentence under § 2255 are narrowly limited. United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir. 1992). A petitioner must demonstrate that the claimed error of law was "a fundamental defect which inherently results in a complete miscarriage of justice." Hill v. Unites States, 368 U.S. 424, 428 (1962). In addition, a guilty plea may only be attacked on collateral review in strictly limited circumstances because the need for finality "has a special force with respect to convictions based on guilty pleas." Bousley. United States, 523 U.S. 614, 621 (1998) (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). When a defendant challenges the validity of a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569 (1989).

Petitioner entered a counseled guilty plea and he does not allege that his plea was involuntary or that his counsel was ineffective. Instead, petitioner attacks the calculation of his sentencing guidelines. Petitioner does not allege a constitutional error and, therefore habeas relief is not warranted. Likewise, petitioner's request for a modification of his restitution order is not cognizable under § 2255. U.S. v. Davis, 2015 WL 4545283 (E.D.Pa. Jul. 28, 2015) ("challenges to restitution are not cognizable under 28 U.S.C. § 2255.).

Therefore, petitioner's claim is not cognizable on habeas review and this petition is dismissed with prejudice.

8